# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No.
Apple iPhone 7 Plus, Model No. 1661, Sprint SIM Card )
8901120100 0524123278, located at 9495 Customhouse )
Plaza, San Diego, CA 92154 )

**FILED**
NOV 3 0 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

**18MJ6097**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952, 960, 963 | Conspiracy to import controlled substances |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Russel Slingerland, Jr., Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11-30-18

*Judge's signature*

City and state: San Diego, CA

Nita L. Stormes, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HECTOR HUGO MENDOZA,<br><br>Defendant. | Case No.: 18CR4996-DMS<br><br>**AFFIDAVIT** |

I, Special Agent Russell Slingerland Jr., of the Department of Homeland Security, Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the Apple iPhone 7 Plus (Model 1661), Sprint SIM Card 8901120100 0524123278 (the **"Target Device"**) depicted and described in Attachment A[1], and seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960, and 963. This search supports an investigation and prosecution of Hector Hugo MENDOZA ("Defendant") for the crimes mentioned above.

2. The **Target Device** was seized from Defendant on or about October 22, 2018, at the time of his arrest at the San Ysidro, California Port of Entry. It is believed that the **Target Device** was used by Defendant to communicate with co-conspirators during a drug smuggling event on October 22, 2018. Defendant has been charged with the unlawful importation of approximately 17.60 kilograms (38.80 pounds) of methamphetamine in the Southern District of California (Case No. 18-MJ-5494). The **Target Device** is currently in the possession of the Customs and Border Protection Evidence Vault, 9495 Customhouse Plaza, San Diego, CA 92154.

---

[1] I was unable to retrieve IMEI Number due to password protection features.

1

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience, training, and consultation with other law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation.

5. Based upon my training, experience, and all the facts and opinions set forth in this Affidavit, I believe the following items will be found in the **Target Device**:

   a. Telephone numbers or identities assigned to the device, including usernames and passwords and electronic mail addresses;
   b. Call history information, including Internet Protocol addresses accessed by the device or accessing the device;
   c. Stored photographs, videos and text messages;
   d. Stored electronic mail, including attachments, and voice messages and other recordings;
   e. Web-browsing history and any stored web pages;
   f. Stored documents and other files;
   g. Stored geo-location information; and
   h. Data stored in any application.

These items may be or lead to evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 952, 960, and 963.

**EXPERIENCE AND TRAINING**

6. I have been employed as a Special Agent at HSI since December 2016. Before that, beginning in November 2003, I was employed as a United States Border Patrol Agent. My duties as a Border Patrol Agent included being a line agent, a canine handler, a canine instructor, and a supervisory agent.

7. I received my Bachelor's degree in social and criminal justice. In addition, prior to college, I served as an Infantryman in the United States Marine Corps for four

years on active duty. I served an additional three years in the Select Marine Corps Reserve while in college, and was honorably discharged as a sergeant.

8. I am also a graduate of the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, where I completed approximately 20 weeks of intensive training in criminal investigations.

9. Since my graduation from FLETC, I have conducted and participated in dozens of investigations related to the trafficking of controlled substances. My experience includes, among other things, debriefing individuals who have been apprehended for the importation of controlled substances, executing search warrants, arresting and interviewing subjects, and conducting and utilizing physical and electronic surveillance.

10. I have also consulted with other HSI special agents who have experience in investigating the importation of controlled substances. Through my training, experience, and consultations with other law enforcement personnel, I am familiar with the operations of illegal international drug trafficking organizations in Mexico.

11. I am familiar with narcotics traffickers' methods of operation, including the distribution, storage, and transportation of narcotics, the collection of money proceeds stemming from narcotics trafficking, and methods of money laundering used to conceal the nature of the proceeds. I have had training in investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as conspiracies associated with criminal narcotics, in violation of Title 21, United States Code, §§ 952, 960, and 963.

12. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involved in the smuggling and trafficking of narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment,

names, photographs, text messaging, and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are often in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance.

13. I have also become knowledgeable of the methods and modes of narcotics operations and the language and patterns of narcotics abuse and trafficking. I know that narcotics traffickers often require the use of one or more telephone facilities to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing, and distributing controlled substances, and for arranging the disposition of proceeds from the sale of controlled substances. My experience as a Special Agent with HSI, my participation in investigations of narcotics organizations, my conversations with other law enforcement officers familiar with narcotics trafficking, and my training inform the opinions and conclusions set forth below, which I drew from the facts set forth herein.

14. Based upon my training and experience as a Special Agent, consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   c. Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

   d. Drug traffickers will use cellular/mobile telephones to direct persons to synchronize an exact drop off and/or pick up time of their illegal cargo.

   e. Drug traffickers will use cellular/mobile telephones to notify or warn their

4

accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with persons who transport their narcotics and/or drug proceeds.

15. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

5

  f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

16. On October 22, 2018, at approximately 8:20 a.m., Defendant applied for permission to enter the United States from Mexico via the San Ysidro, California Port of Entry via the vehicle lanes. Defendant was the driver of a 2014 Chevrolet Camaro.

17. After arriving at the Port of Entry, Defendant was interviewed by a Customs and Border Protection (CBP) Officer. Defendant told the CBP Officer that he was coming to the United States to go return home to San Jose, California. A roving CBP canine team had previously requested assistance with the vehicle after the canine alerted to a trained odor in the vehicle in the pre-primary inspection area of the port of entry. The Defendant was referred to the secondary inspection area for further inspection.

18. At secondary inspection, Defendant's vehicle was scanned by a "Z-portal" (an x-ray machine-like device), and the Z-Portal operator confirmed anomalies in the gas tank. The gas tank of the vehicle was accessed by a contract mechanic after considerable efforts due to the design of the vehicle. After it was accessible, CBPOs removed thirty-three packages from the vehicle gas tank. The contents of these packages were field tested. The packages yielded positive results for methamphetamine. Defendant was subsequently arrested, and the **Target Device** was seized incident to Defendant's arrest.

19. The Defendant was searched inside the San Ysidro Port of Entry Security Office. While this was being done, searching and witnessing CBPOs collected the **Target Device**, among other personal effects, from the Defendant. These items were placed in a plastic evidence bag, and a plastic bin, in accordance with Port policies and procedures. I came in to contact with the **Target Device** during the initial review of evidence, at the initiation of my investigation, prior to interviewing the Defendant.

20. Defendant was charged by complaint with the unlawful importation of approximately 17.60 kilograms (38.80 pounds) of methamphetamine in the Southern District of California (Case No. 18-MJ-5494).

21. Based upon my experience and investigation in this case, I believe that Defendant, as well as other persons as yet unknown, were involved in an ongoing conspiracy to import methamphetamine. Based on my experience investigating narcotics smugglers, I also believe that Defendant may have used the **Target Device** to coordinate with co-conspirators regarding the importation and distribution of controlled substances, and to otherwise further this conspiracy both inside and outside of the United States.

22. Further, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of Defendant, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos and other digital information are stored in the memory of the **Target Device**.

23. Finally, I am aware that drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as Defendant will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to be involved. Given those facts, I respectfully request permission to

search the **Target Device** for data beginning on July 22, 2018, up to and including October 22, 2018.

## METHODOLOGY

24. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

27. Based on all of the facts and circumstances described above, there is probable cause to conclude that Defendant used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952, 960, and 963.

28. Because the **Target Device** was promptly seized during the investigation of Defendant's trafficking activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by Defendant continues to exist on the **Target Device**. As stated above, the proposed date range for this search is from July 22, 2018, up to and including October 22, 2018.

29. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Russell Slingerland Jr.
Homeland Security Investigations

Subscribed and sworn to before me
this ___30___ day of November, 2018.

The Honorable Nita L. Stormes
United States Magistrate Judge

9